Filed 2/24/15  In re Matthias A. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re MATTHIAS A. et al., Persons Coming Under the Juvenile Court Law. | B257192 (Los Angeles County Super. Ct. No. CK99046) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JACQUELINE D. et al., Defendants and Appellants. | |

APPEALS from an order of the Superior Court of Los Angeles County.  Stephen Marpet, Juvenile Court Referee.  Affirmed.

————

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant Jacqueline D.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant Mathew A.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

Mother Jacqueline D. and father Mathew A. appeal from the juvenile court's order terminating their parental right as to their two young sons. Without contesting the merits of the termination, father contends that the order should be conditionally reversed because the Department of Children and Family Services (DCFS) did not give notice under the Indian Child Welfare Act (ICWA) as directed by the court. Mother joins in father's argument. We conclude that any deficiency in notice does not warrant a conditional reversal. We, therefore, affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2013, DCFS filed a petition under Welfare and Institutions Code section 300, subdivision (b)[1], as to Matthias A., then age two, and Deonte A., then age one, against mother and father. DCFS asked mother whether the children had any Indian ancestry and mother replied that neither she nor father has "any Native American heritage." Mother also filled out the Parental Notification of Indian Status form and checked the box indicating, "I have no Indian ancestry as far as I know." Mother appeared at the detention hearing, but father did not. The juvenile court detained the children, found father as the presumed father and determined that ICWA did not apply.

Several weeks later, on May 8, 2013, a Parental Notification of Indian Status form was filed on behalf of father. Father did not sign or date the form. The box stating "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe" is checked, and the phrase "Cherokee & Apache—MGM is full blooded Apache" is written below the box. That same day, the juvenile court ordered DCFS to "[g]ive notice of proceeding to the following persons for next hearing: ICWA NOTICES AS TO THE FATHER/PAT. GRANDMOTHER."[2]

At the adjudication hearing, on July 15, 2013, mother and father waived their trial rights and submitted on the petition. The juvenile court found the children dependents of

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] The reference to "MGM" in father's form is ambiguous, as it does not specify to which relative he is referring. The juvenile court's ICWA order specified the paternal grandmother.

2

the court under section 300, subdivision (b), sustaining allegations as follows: (1) "The children['s] . . . mother . . . has a[n] unresolved history of substance abuse, which periodically renders the mother incapable of providing regular care of the children. On 03/30/2013, the mother had a positive toxicology screen for amphetamine, methamphetamine and marijuana. Further the parents allowed the maternal uncle . . . to live in the home and use[] drugs in the children's presence. The mother's substance abuse and acts [as] parent[] endanger[] the children's physical health and safety, placing the children at risk"; and (2) "[t]he children['s] . . . father . . . has mental and emotional problems, including a diagnosis of Bipolar Disorder, which renders the father periodically unable to provide regular care of the children. The father has self medicated with marijuana to cope with his mental and emotional problems. The father failed to obtain necessary psychiatric treatment. Such mental and emotional condition on the part of the father endangers the child[ren] and places [them] at risk." The court removed the children from mother's and father's custody and ordered DCFS to provide reunification services and monitored visits.

On January 13, 2014, the juvenile court terminated reunification services for mother and father and set the matter for a section 366.26 hearing, which was held on June 19, 2014.[3] In connection with the section 366.26 hearing, DCFS filed a Last Minute Information for the Court, indicating that its investigator had spoken to the paternal grandmother and the paternal great aunt, who both "denie[d] Native American heritage." DCFS requested that the court issue an ICWA finding as to father. The court terminated parental rights of mother and father as to the children and found the children adoptable, deeming their current caretakers as the prospective adoptive parents. Regarding ICWA, the minute order stated, "The Court does not have a reason to know that th[ese] [are]

---

**3** During the pendency of these proceedings, mother had a third child. That child has a different father from the children at issue in this appeal. A dependency case was initiated with respect to the third child, but that case is not part of this appeal.

Indian Child[ren], as defined under ICWA, and does not order notice to any tribe or the [Bureau of Indian Affairs]." Mother and father each filed a timely notice of appeal.**4**

**DISCUSSION**

Mother and father do not challenge the substantive ruling of the juvenile court terminating their parental rights as to the children. Rather, their only argument is that DCFS did not effectuate notice under ICWA as ordered by the court and thus the order terminating parental rights should be conditionally reversed and the matter remanded to the court for proper notice. According to mother and father, the juvenile court, on May 8, 2013, ordered DCFS to notice the Cherokee and Apache tribes, and DCFS failed to do so. The minute order from that date, however, does not indicate that the court specified notice to those tribes but rather stated that DCFS should provide "notice of proceeding to . . . : ICWA NOTICES AS TO THE FATHER/PAT. GRANDMOTHER."**5** Even assuming that the court intended for DCFS to effectuate notice to the Cherokee and Apache tribes, its failure to do so is harmless and thus does not warrant a conditional reversal of the judgment.

"ICWA furthers the federal policy '"' that, where possible, an Indian child should remain in the Indian community . . . .'"' [Citation.]' [Citation.] It requires that notice of the dependency proceeding be given to the relevant tribe or tribes whenever 'the court knows or has reason to know that an Indian child is involved . . . .' [Citation.] . . . The court and DCFS have a continuing duty to inquire about the possible Indian status of the child. [Citation.] [¶] We review the [juvenile] court's findings whether proper notice was given under ICWA and whether ICWA applies to the proceedings for substantial evidence. [Citation.] Deficiencies in ICWA inquiry and notice may be deemed harmless error when, even if proper notice had been given, the child would not have been found to

---

**4** We liberally construe mother's notice of intent, filed on July 8, 2014, as a notice of appeal from the order terminating her parental rights (Cal. Rules of Court, rule 8.821(a)(2)) and thus consider her brief, along with father's, in this appeal.

**5** We have not been provided with a reporter's transcript of the May 8, 2013 hearing. We have only the minute order from that date.

be an Indian child. [Citations.]" (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1250-1251.)

DCFS did not give the notice to the Cherokee and Apache tribes as mother and father contend was ordered by the juvenile court. Nevertheless, although father did not sign or date the Parental Notification of Indian Status form that his counsel filed with the court, DCFS contacted the paternal grandmother and the paternal great aunt and inquired about Indian ancestry. Both "denied Native American heritage."[6] DCFS thus did not abandon its duties under ICWA but rather made "further inquiry regarding the possible Indian status of the child[ren] . . . ." (§ 224.3, subd. (c); see also Cal. Rules of Court, rule 5.481(a).) That inquiry revealed the children did not have Indian status, and the court made such a finding upon terminating parental rights. The failure to send notice to the tribes, therefore, was harmless.

Although father's Parental Notification of Indian Status form listed "MGM" as the relative with Apache heritage, the juvenile court referenced the paternal grandmother regarding ICWA in its May 8, 2013 minute order and DCFS interviewed the paternal grandmother, as well as the paternal great aunt, when making ICWA inquiries. As noted, father did not sign or date his form, and thus nothing indicates that he checked it for accuracy. We do not have a reporter's transcript from the May 8, 2013 hearing, but father does not claim that he objected to the court's reference to the paternal grandmother at that or any other time. Moreover, DCFS's Last Minute Information for the Court filed on June 19, 2014 in conjunction with the hearing on termination of parental rights stated that it had spoken to the paternal grandmother and the paternal great aunt and that both had denied Native American Heritage. DCFS also requested that the court issue an ICWA finding as to father and noted that it still was recommending termination of parental rights. Father did not object to the termination of parental rights based on the fact that DCFS had not interviewed a maternal grandmother regarding Indian status or suggest that a continuance was necessary for DCFS to contact anyone other than the paternal grandmother and paternal great aunt as it already had done. As a result, the

---

**6**     At the outset of the case, DCFS also made an ICWA inquiry to mother, and she revealed that neither she nor father had any Native American heritage.

"MGM" reference on father's form does not warrant a conditional reversal of the order terminating parental rights.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.[*]

_____

[*]     Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.